Hedge *v.* Clapp.

## HEDGE *vs.* CLAPP.

It is not a ground of error, that the court received evidence of the declarations of a witness, contradictory to his statements, sworn to on the trial, without requiring that the witness should have been first inquired of, on cross-examination, whether he had made such contradictory statements. Such contradictory statements are, of themselves, proper matters of evidence; and the time and order of receiving such evidence, rests in the discretion of the court.

The English rule, first promulgated in the Queen's case, (2 B. & B., 310,) that a witness can not be impeached, by proof that he has made statements contradictory to what he has sworn upon the trial, unless he has been inquired of, on cross-examination, as to such alleged contradictions, has never been adopted in this state, by any legislative enactment or judicial decision.

The decision in the case of *Tucker* v. *Welsh*, 17 Mass. R., 160, cited and approved.

THIS was an action of *assumpsit*, tried before the jury, at the August term, 1852, of the county court, for Hartford county.

The defendant pleaded the general issue, with notice of

special matter, to be given in evidence, and also, that she should claim a set-off of an indebtedness of the plaintiff.

On the trial, the plaintiff offered Dorcas H. Chandler, as a witness, who testified, that certain household furniture, which was a matter of charge against the plaintiff, in the defendant's notice of set-off, was in the defendant's possession, about the last of May, or first of June, 1851 ; that said furniture was removed by the plaintiff, from the defendant's possession, about that time ; that she was present, when such furniture was removed; that the defendant, on the day of the removal of said furniture, went out, for the purpose of buying other furniture, to supply the place of the furniture so removed ; that she soon after returned, said she had purchased other furniture, had made several dollars by it, and, as the plaintiff's furniture was being removed, said she was glad of it, as she could now furnish her front room with her own furniture.    Said witness was not inquired of, by the defendant, nor did she testify, whether she had said anything, or what she had said, out of court, to the defendant, or to her daughter, in regard to the witness being absent, at the time of the removal of said furniture, nor whether she had told said defendant, or said daughter, or any other person, that she was not present, at the time of such removal, nor what she had said, out of court, or if she had said anything, in regard to any of the matters referred to, in the testimony as set forth.    The defendant, for the purpose of discrediting and contradicting the testimony of said witness, offered her-self and her daughter, as witnesses, to prove that said Chandler had declared to them, out of court, that she was not present, when said furniture of the plaintiff was removed, and knew nothing about it.

To the admissibility of this testimony, the plaintiff objected, on the ground that said Chandler had not been asked, and had not testified, whether she had declared, out of court, that she was absent, at the time of said removal of furniture,

or what she had declared in regard thereto. At the time said testimony was offered, said Dorcas was not in court, but she had not been dismissed, as a witness, and might have been called upon to testify, relating to said matters, after the introduction of said witnesses. The court overruled said objections, and permitted said witnesses, and each of them, to testify, that said Dorcas had declared to them, out of court, that she was absent, at the time of said removal of furniture, and knew nothing about it. To which ruling of the court, at the time of said ruling, the plaintiff did not except, nor request the court to make any minute of such exception.

The jury having returned a verdict in favor of the defendant, and judgment being rendered thereon, the plaintiff filed a bill of exceptions, and by motion in error, brought his case before the superior court, when the judgment of said county court was affirmed, and thereupon, by motion in error, the case came to this court.

*Hubbard,* for the plaintiff in error, contended, that a witness can not be contradicted, by proof of declarations, made out of court, without first asking the witness, as to those declarations. *Queen's Case,* 2 Brod. & Bing., 284. *Angus* v. *Smith,* 1 Moody & Malk., 473. *Crowly* v. *Page,* 7 C. & P., 792. *Carpenter* v. *Wall,* 11 Ad. & El., 808. 1 Stark. Ev., 213, 605. 2 Phil. Ev., Hill and Cowen's Notes, 772. 1 Greenleaf's Ev., 462. *Kimball* v. *Davis,* 19 Wend., 445. *Franklin Bk.* v. *Steam Navigation Co.,* 11 Gill & Johns., 28. *Doe* v. *Reagan,* 5 Black, 217. *Story* v. *Saunders,* 8 Humphy., 663.

*Welles,* for the defendant, contended, 1. That the testimony received by the county court, is admissible, as substantive evidence, and there is no necessity for laying a foundation for its admission, by an inquiry of the witness who is to be disparaged. This was the English rule, until the

Hedge v. Clapp.

Queen's case, 2 B. & B., 300, 313.  Phil. Ev., 230, 231, (ed. 1820.)  Peake Ev., 89.  2 Esp. N. P. R., 691.  Phillips lays down the rule, without qualification, that " the credit of a witness may be impeached, by proof, that he has made statements, out of court, on the same subject, contrary to what he swears at the trial."  Neither Gilbert, Peake, Phillips, nor any other writer on evidence, lays down any such rule as that in the Queen's case, occurring previous to that time.  *Tucker* v. *Welsh*, 17 Mass. R., 160.  In Connecticut, the former practice was, to introduce contradictory evidence, without first inquiring of the witness.  *Judson* v. *Blanchard*, 4 Conn. R., 557.  *Atwood* v. *Welton*, 7 *Conn. R.*, 66.

It is not the fact that the witness is, or may be, contradicted, on the stand, that makes the evidence admissible ; but that he has given different and contradictory accounts ; and this may be proved by any competent evidence, as *a fact*, which affects his credit.  Phil. Ev. (ed. 1820,) 231.  Note containing opinion of Lord Redesdale.  All the authorities, cited by the opposing counsel, have their origin in the Queen's case.

2. This being substantive ground of evidence, the time and order of its admission must rest in the discretion of the court, and is not a ground of error.  It is a mere matter of convenient practice.  11 Wheaton, 280, 302.  5 Conn. R., 187.  1 Conn. R., 49.  6 Conn. R., 559.  *Hathaway* v. *Hemingway*, 20 *Conn. R.*, 196, 9.  *Doane* v. *Cummings*, 11 Conn. R., 152.

3. In this case, the plaintiff might have recalled his witness, and has therefore suffered nothing, from the decision complained of.

*Hungerford*, on the same side, declined further argument.

Church, C. J.   This is a motion in error, to reverse the judgment of the superior court, by which a judgment of the county court, on motion in error, had been affirmed.

The ground of exception to the decision of the county court is, that witnesses were called by the defendant to testify, and did testify, that Dorcas H. Chandler, who had before been called by the plaintiff, to testify, had, out of court, stated to them, facts contradictory to, and inconsistent with, her testimony given in chief, for the plaintiff, without being inquired of, by the defendant, on her cross-examination, and without testifying, whether she had made to the defendant's witnesses or others, any such contradictory or inconsistent statements, as sworn to by them. This testimony, thus introduced by the defendant, upon objection, was admitted by the county court ; and this, without recalling the said Dorcas, who might have been recalled, to contradict or explain.

The question before us, is not what has been, either anciently or in modern times, or what we may think would be, a reasonable or convenient practice, resting in the discretion of the court, in the examination of witnesses, either as to the order or subject of such examination ; but whether any rule or principle of law, of which the plaintiff had a right to avail himself, has been violated by the county court, so that he is entitled, as a matter of right, to demand a reversal of the judgment of that court.

In the admission or rejection of testimony, and in regard to many matters occurring in the course of trials, the due course of justice demands, to some extent, the exercise of a discretionary power by the court. In exercising such discretion, courts frequently regard former usages and practice, although when propriety seems to demand it, they pass by such practice, and, without violating any legal rights of parties : thus they often depart from the usual course of procedure, to protect a witness from surprise and embarrassment ; or to expose one to detection, who seems disposed to conceal or prevaricate, &c.

In this state, we do not believe there has been a uniformity of usage, in conducting the examination of witnesses who have made contradictory statements out of court, since

Hedge *v.* Clapp.

the Queen's case, in 1820; although, before that time, a contradiction of a witness might be proved, without qualification. Sometimes the impeaching proof has come in, without objection; sometimes, the first witness, upon cross-examination, has been inquired of, generally, whether he has ever made a different representation of facts, without referring to circumstances or persons, and this has been very frequently done; and sometimes, the course now insisted upon by the plaintiff, as the only proper one, has been pursued. We conclude, therefore, that the legal profession here, has never considered the law on this subject, to be fixed, but has treated the *subject*, rather as a matter of practice, in the examination of witnesses, and subject to the discretion of the court.

We do not very well see, how an unyielding rule can be prescribed, in conformity with the rule claimed by the plaintiff, which shall apply consistently to all cases. A great portion of the evidence in our courts, consists of depositions, and it would be found quite impossible, in depositions taken *ex parte*, to apply any such principle or practice.

The judges, in the Queen's case, reported in 2 Brod. & Bing., 301, (6 E. C. L. 112,) adverted to an existing usage, in support of the advice which they gave to the House of Lords, establishing the rule of evidence now relied upon by the plaintiff; but they refer to no book or reported case, upon which they relied as an authority; and we believe that no such existed, in any such form as to furnish evidence, that such, before that time, was the common law of the land, or of the courts, rather than a mere rule of practice, which some or more of the judges had, in the exercise of a discretionary power, followed at the circuits. Indeed, the English judges, in subsequent cases, appeal, in support of the rule, which is certainly now well established in their courts, solely to the Queen's case, as its origin. *Angus* v. *Smith*, 1 Moody & Malkin, 360. *Crowley* v. *Page*, 7 Car. & P., 789. If this be so, it can not be claimed properly, that the law, as received and understood in this state, before that case, has

been abrogated and abandoned, and the new principle engrafted into our system of jurisprudence, unless by some statute provision, or judicial decision of our own ; and there has been no such. We must, therefore, look for our law, on this subject, to a period before the decision of the Queen's case.

Chief Baron Gilbert, in his treatise on evidence, the first book of authority on this branch of the law, does not allude to any principle, known in his time, which required, on cross-examination, that a witness should be inquired of, as to his acts or declarations, out of court, in order to admit evidence, by way of impeachment, of his inconsistent testimony in court. He gives the principle without qualification : " a prisoner may bring evidence to prove, the witness gave a different testimony, before a justice of the peace, or at another trial." Gilbert's Law of Ev., 31.

Mr. Peake asserts the principle, without condition or qualification, that " declarations, made by a witness, on the same subject, contrary to what he swears on the trial, may be given in evidence, to impeach his credit." Peake's Ev., 89. So Phillips, in the first edition of his very valuable work, published in the year 1817, three years before the trial of Queen Caroline, states the law in the same manner ; although he gives it differently, in subsequent editions, published after that trial. Phil. on Ev., 1 edition, p. 230. In *De-Sailly*. v. *Morgan*, 2 Esp. Cas., 691, it was decided, that a letter, written by a witness, might be read, to contradict his testimony in chief, although no allusion was made to it, on his cross-examination. In *Christian* v. *Coombe, id.,* 489, a protest, signed by a witness, was admitted for the same purpose.

No qualification of the rule or practice, as laid down in the authorities above referred to, is suggested by Judge Swift, in his system, or in his law of evidence, nor in his digest, nor have we any decided case, adopting the modern qualification, as recognized in the Queen's case.

In the case of *Tucker* v. *Welsh*, 17 Mass. R., 160, this subject was brought under the notice of the supreme court of Massachusetts, and well considered, and in the result, the court say : " Whatever may be the reasons for adopting the practice in England, of first advertising a witness, on what grounds he is about to be impeached, we are satisfied that such practice has never prevailed here. In England, it is rather a matter of practice, than a rule of evidence, as would seem by the opinion of the judges in the Queen's trial. It may date its origin long since we were bound by English laws, and if so, would have no force here, except by adoption."

The same views, and we think they are correct, are expressed by the court in Maine, in the case of *Ware* v. *Ware*, 8 Greenlf., 42.

We think we are justified, from the foregoing view of the law, in our opinion, that, however proper and salutary the practice may be, as now established by the courts in England, on the subject we have been considering, yet the rule has never been adopted, as a principle of our law of evidence, that the credit of a witness can not be impaired or impeached, by proving contradictory statements made by him, out of court, unless his mind and recollection have been called to them, on his cross-examination, so as to justify us in reversing a judgment, as a matter of legal right, because such rule or practice has been disregarded. And, it is important, we think, to notice the fact, that the opinions, expressed by the judges in the Queen's case, were intended to influence a court, in the progress of a pending trial, and were not pronounced upon the question, whether a judgment, already rendered, should be reversed; if they had been, the judges would have decided explicitly, whether the course of examination, thus approved by them, was a matter of judicial practice merely, or required by any known and settled principle of the law.

In the present case, at any rate, we see no cause for the

plaintiff's complaint.    His witness was still within his reach, and subject to his control, after the impeaching testimony had been heard ; and all the cases agree in determining, that, in such case, the witness could have been recalled by the plaintiff, for the purpose of explanation.

Now, although for the reasons suggested, we can not reverse this judgment, yet we feel that in many, if not in most cases, the rule of practice and course of the examination of witnesses, as recognized and established by the courts of England, where contradictory representations are relied on, for the purpose of impeachment, is a very safe and conservative one, as protecting the just rights of witnesses, as well as calculated to elicit the truth, and one to which it will be very proper to adhere, subject to such exceptions as a sound discretion may, from time to time, suggest.

In this opinion, the other judges concurred, except WAITE, J., who tried the case in the court below, and was disqualified.

Judgment affirmed.