STATE OF CONNECTICUT *v.* ANTHONY SAIA

HOUSE, C. J., COTTER, BOGDANSKI, LONGO and BARBER, Js.

Argued October 8—decision released December 7, 1976

*Rudra Tamm,* special public defender, for the appellant (defendant).

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BARBER, J.  The defendant, Anthony Saia, was indicted by a grand jury for the crime of murder in the first degree, alleging that on December 9, 1970, at Fairfield, he did wilfully, deliberately, with premeditation and malice aforethought, shoot and kill Francisco Martinez, in violation of § 53-9 of the General Statutes.  The defendant pleaded not guilty and elected to be tried by a jury of twelve.  The case was tried and the jury returned a verdict of guilty of murder in the first degree as charged.  The defendant was sentenced by the court to life imprisonment and it is from that judgment that he has taken this appeal.

On the appeal, the defendant has pursued five claims of error.  The defendant claims (1) that there was "insufficient probable cause" to issue an arrest warrant, (2) that the court erred in refusing to

allow evidence regarding a polygraph test, (3) that the court erred in refusing to strike testimony of the defendant's wife on the ground of confidential communication, (4) that the court erred in excluding certain evidence adduced at a previous trial, and (5) that the verdict was contrary to law and the evidence.[1]

From a review of the evidence, the jury could have reasonably found the following facts: On the evening of December 9, 1970, the defendant met Ernest L. Stewart at Lavery's Bar and Grill in Bridgeport and indicated to Stewart that he wanted to go out and make some money. The two then went to the Clover Club on State Street. After acquiring a revolver, the defendant indicated to Stewart that he had a plan by which he was going to get money from a "faggot." The defendant then placed a telephone call and, soon thereafter, Francisco Martinez drove to the Clover Club in a dark green, four-door Cadillac automobile. The defendant talked Martinez into driving to an area on Morehouse Highway near Congress Street in Fairfield. The defendant got Martinez out of the car by asking him to remove some tires from the trunk of the vehicle. As Martinez was about to remove the second tire from the trunk, the defendant fired one shot into the right side of Martinez's head. The shot killed Martinez and his body was pushed into the trunk. The defendant had told Stewart that he was going to kill Martinez to get his money. The defendant and Stewart drove in Martinez's Cadillac to a dump area in Milford where the defendant removed the body of Francisco Martinez from the trunk of the car and rolled it down a hill, thereafter covering

[1] The defendant has briefed under this issue several rulings on evidence claimed to be erroneous.

the body with tires and newspapers. The defendant took Martinez's wallet and credit cards and a bankbook from the glove compartment of the car. Thereafter, the defendant removed a number of items from Martinez's house and withdrew funds from a savings account in Martinez's name. On December 11, 1970, the defendant picked up his wife in Martinez's Cadillac and, with a number of other people, drove to New York and went on a shopping spree. He purchased a number of items in many different stores and paid for them with credit cards belonging to Martinez, and, in so doing, identified himself as Francisco Martinez. He also attempted to cash two checks allegedly drawn by Martinez, and at other times represented himself to be Martinez. The defendant told both his brother-in-law, Badgie Chapman, and his wife that he had killed Francisco Martinez. Although there are many other factual details which the jury could have reasonably found, it would serve no useful purpose to include them in this summary.

We now consider the five claims of error raised by the defendant in the order enumerated in the parties' briefs.

I

The defendant has first claimed that there was no probable cause to issue an arrest warrant because the affidavit of Captain Anthony P. Fabrizi, of the Bridgeport police department, attached to the application for a bench warrant neither named the informer nor stated his previous use or reliability. The record does not show that this issue was ever raised or decided by the trial court. It does appear that the defendant pleaded to the indictment and that at no time prior to judgment did

he attack the validity of the bench warrant. Under these circumstances, any defect in the supporting affidavit was waived. *Reed* v. *Reincke,* 155 Conn. 591, 599, 236 A.2d 909. Had the issue been raised, the court could have found that there was substantial basis for crediting the hearsay. The affidavit purported to relate the personal and recent observations of the informant and contained some of the underlying circumstances from which the officer could conclude that the informant, whose identity need not be disclosed, was credible or his information reliable. See *United States* v. *Harris,* 403 U.S. 573, 581, 91 S. Ct. 2075, 29 L. Ed. 2d 723; *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *State* v. *Williams,* 169 Conn. 322, 329, 363 A.2d 72; *State* v. *Jackson,* 162 Conn. 440, 450, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121.

## II

In his brief, the defendant claims that the court erred in refusing to allow any evidence regarding a polygraph (lie detector) test taken by the defendant or regarding a stipulation as to the admissibility of its results. Although the brief asserts a stipulation between the defendant and the state's attorney regarding the admissibility of the polygraph test, the defendant's counsel admitted in oral argument that the claim of a proper stipulation is not supported by the record. It follows that much of the defendant's argument regarding the admissibility of the polygraph test has no application to this case. See annot., 53 A.L.R.3d 1005 (tests taken upon stipulation that the results will be admissible in evidence). The record shows only that the court excluded evidence of a polygraph test claimed to

have been taken by the defendant. In ruling as it did, the trial court was following the rule in this jurisdiction that polygraph evidence is inadmissible. *State* v. *Carnegie,* 158 Conn. 264, 272, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455; *Molino* v. *Board of Public Safety,* 154 Conn. 368, 376, 225 A.2d 805. The courts of other jurisdictions also have generally rejected the results of polygraph tests either as substantive evidence or as relating to the credibility of a witness for the reason that such tests have not been accepted as a reliable and accurate means of ascertaining the truth. 29 Am. Jur. 2d, Evidence, §§ 296, 831; McCormick, Evidence (2d Ed.) § 207. We are not convinced, from the facts of this case, that our rule pertaining to the inadmissibility of those tests should be altered at this time. The trial court committed no error in excluding the evidence.

### III

The defendant's third claim is that the court erred in refusing to strike testimony of Teretha Saia, the defendant's wife, on the ground that it disclosed a confidential communication with her spouse. The cases cited by the defendant in support of this allegation indicate that he may have confused three distinct issues: (1) a spouse's disqualification as a competent witness, (2) a defendant spouse's privilege against adverse marital testimony, and (3) the privilege of confidential communications between spouses. See 8 Wigmore (McNaughton Rev.), Evidence § 2334. At early common law, the husband or wife of a party was disqualified as a witness and prevented from testifying either for or against the party in any case, either civil or criminal. See 81 Am. Jur. 2d, Wit-

nesses, § 148; McCormick, op. cit. § 66. Connecticut, however, has provided by statute that "[a]ny person on trial for crime shall be a competent witness . . . . If such person has a husband or wife, he or she shall be a competent witness but may elect or refuse to testify for or against the accused." General Statutes § 54-84. Mrs. Saia was clearly a competent witness within the unambiguous wording of the statute. *State* v. *Volpe*, 113 Conn. 288, 292, 155 A. 223. Moreover, § 54-84 gives the witness spouse the option of testifying against an accused spouse. As this court said of the substantially similar predecessor to this section, § 8800 of the 1949 Revision: "[O]ur statute does not render the wife an incompetent witness against her husband but permits her to testify or to refuse at her option." *State* v. *Volpe*, supra; *State* v. *Walters*, 145 Conn. 60, 66, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45. The common-law restriction against adverse marital testimony was founded on the legal unity of the spouses and the policy of preventing discord between them. *Spitz's Appeal*, 56 Conn. 184, 186, 14 A. 776. The jurisdictions which, like Connecticut, have statutorily limited this restriction on adverse spousal testimony by allowing only the witness spouse to invoke a privilege to refuse to render such testimony have done so apparently on the theory that the witness spouse should be permitted to determine whether the marriage can or should be saved by a refusal to testify. See comment, "Marital Privileges and the Right to Testify," 34 U. Chi. L. Rev. 196, 199. In the present case, Mrs. Saia was informed of her right to refuse to testify against her accused husband, after which she specifically stated that she understood and waived this

right, and wished to testify. As for the defendant's allegation that Mrs. Saia's testimony regarding her husband's confession violated a confidential communications privilege, any such claim was waived by the accused and cannot be asserted now. The defendant, without objection, consented to repeated testimony by Mrs. Saia concerning conversations with her husband in which he admitted killing Francisco Martinez. Mrs. Saia was questioned on this subject several times, both on direct and cross-examination. Nor was a claim of confidential communication raised when Mrs. Saia had earlier testified that the defendant told her the hill on which Martinez was shot would be a good spot if he, the defendant, were to kill someone. A party consenting that a witness testify to a matter on direct and cross-examination may not, thereafter, have the evidence struck out on the ground that it related to a confidential or privileged communication. *Zullo* v. *Zullo,* 138 Conn. 712, 716, 89 A.2d 216; 81 Am. Jur. 2d, Witnesses, § 171. The trial court did not commit error in refusing to strike Mrs. Saia's testimony.

## IV

Toward the end of the trial, the defendant indicated that he wanted to examine evidence pertaining to a former trial in which he was the defendant. The defense then called Captain Fabrizi who, in the absence of the jury, stated that a revolver marked for identification at the former trial was the same as the one introduced and marked as exhibit X in this case. The defendant then indicated that his next move would be to recall for further cross-examination the state's witness, Stewart, concerning this gun, for the purpose of impeaching him by showing an inconsistent statement. This

was not done. Instead, the defense attempted to read the testimony of Stewart concerning the revolver from what purported to be a transcript of the former trial. The court refused to allow the defendant to do so and an exception was taken. The basis for the court's ruling is not clear because it acted upon its own motion. The defense then recalled the defendant to the stand to testify as to his recollection of what Stewart had said about the revolver at the former trial. The court sustained the state's general objections to this line of questioning. The state claims, in its brief, that the court's rulings were correct because no foundation had been laid for admitting this evidence of allegedly impeaching testimony. The defendant claims that the court should have let Stewart be recalled for further cross-examination regarding his inconsistent prior testimony but it does not appear that this approach was pursued by the defendant.

It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724, cert. denied, sub nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557; *State* v. *Walters,* supra; Holden & Daly, Connecticut Evidence § 125 (d). This is based on the notion that talking one way on the stand, and another way previously, raises a doubt as to the truthfulness of both statements. See McCormick, Evidence (2d Ed.) § 34. The impeachment of a witness by extrinsic evidence is somewhat limited. Not only must the inconsistent statements be relevant and of such a kind as would affect the credibility of the witness; *Martyn* v.

*Donlin,* 151 Conn. 402, 408, 198 A.2d 700; *Todd* v. *Bradley,* 99 Conn. 307, 323–24, 122 A. 68; but generally a foundation should be laid at the time of cross-examination. McCormick, op. cit. § 37; 2 Wharton, Criminal Evidence (13th Ed.) § 468; 81 Am. Jur. 2d, Witnesses, § 626. In this state, we have no inflexible rule regarding the necessity of calling the attention of a witness on cross-examination to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him. From early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid. *Fairbanks* v. *State,* 143 Conn. 653, 657, 124 A.2d 893. The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case. *Adams* v. *Herald Publishing Co.,* 82 Conn. 448, 452–53, 74 A. 755; *Bradley* v. *Gorham,* 77 Conn. 211, 213, 58 A. 698; *Tomlinson* v. *Derby,* 43 Conn. 562, 565; *McGinnis* v. *Grant,* 42 Conn. 77, 79; *Hedge* v. *Clapp,* 22 Conn. 262, 268; see *Chany* v. *Hotchkiss,* 79 Conn. 104, 106, 63 A. 947. Under the circumstances of this case, the court's rulings were well within its discretion.

## V

Finally, the defendant claims that the verdict was contrary to law and the evidence. A motion to set aside the verdict was denied by the court. Not only does the defendant claim that the evidence was insufficient to sustain the jury's verdict but that several erroneous rulings on evidence were made during the trial. When a verdict is challenged on appeal because of insufficient evidence, the issue

is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Ruiz,* 171 Conn. 264, 276–77, 368 A.2d 222; *State* v. *Benton,* 161 Conn. 404, 407, 288 A.2d 411. The evidence recited in the state's statement of facts, referring to the transcript, summarized earlier, when viewed in the light most favorable to sustaining the verdict, amply supports the verdict found by the jury. *State* v. *Annunziato,* 169 Conn. 517, 521, 363 A.2d 1011.

There is no claim that the verdict is against the law because of erroneous instructions to the jury. See *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 77, 111 A.2d 547. The claims of error on the rulings on evidence have no merit and, therefore, do not affect the validity of the verdict. We will, however, discuss them briefly.

The defense asked Stewart, one of the witnesses for the state, the following question: "If Detective McDonough or Detective Roberts testified that you told them—or if they testified that you told them that you didn't know Martinez's body was in the trunk of the car until after you got to the dump, and that Mr. Saia had picked you up at Lavery's Bar with Mr. Martinez's car, they would be mistaken?" The court sustained an objection by the state and the defendant took an exception, but the record discloses no attempt by either party to furnish the court with any claim with respect to admissibility or inadmissibility of the pending question. This is necessary by virtue of §§ 226 and 652 of the Practice Book, and the failure of a party to comply with this rule involves a considerable

risk and may preclude that party from obtaining appellate review of an adverse ruling. *State* v. *Marshall,* 166 Conn. 593, 603, 353 A.2d 756; *Casalo* v. *Claro,* 147 Conn. 625, 628–31, 165 A.2d 153; see *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249. On its face, the question assumes facts not in evidence and is improperly framed. McCormick, Evidence (2d Ed.) § 7; see *State* v. *Isaacson,* 114 Conn. 567, 574, 159 A. 483. The court, in sustaining the objection, was within its wide discretion. *State* v. *Carnegie,* 158 Conn. 264, 273, 259 A.2d 628.

The defendant claims it was error to refuse to strike certain testimony of Captain Fabrizi on the ground that it was hearsay. The defendant's brief fails to designate adequately the testimony in question as required. Practice Book § 631A (c) (3). We have, however, consulted the transcript and find the defendant's claim to be without merit. The police officer's testimony concerned his investigation and search in the Morehouse Highway area where the killing was alleged to have taken place. Captain Fabrizi was not relating hearsay assertions but was testifying as to facts of his own knowledge which were based on what he saw and did concerning the factual matters to which he was called to testify. See 29 Am. Jur. 2d, Evidence, § 4.

Juliano Seriani, a witness for the state, testified that the defendant Saia had told him that when he, Saia, was going to rob Martinez, Martinez pulled a knife and Saia shot him. On cross-examination, the witness said he told this story to the police while his friends were at the police station. The defense then asked if his friends were under arrest at that time. There was an objection by the state

which the court sustained. The defendant now asserts that the question was asked to show bias. This was not the claim made to the trial court. Accordingly, this court will not consider it for the first time on appeal and the court did not commit error in sustaining the objection. Practice Book §§ 226, 652; *State* v. *Lemieux,* 160 Conn. 519, 522, 280 A.2d 874.

Richard Pellegrino was called as a witness for the defense and testified as to certain events on December 9 and 10, 1970. The state, on cross-examination, inquired of events in December, both prior to and after December 9 and 10. The defense objected to the questions on the ground that the direct examination only referred to December 9 and 10 and, therefore, the state had gone beyond the scope of the direct examination. While cross-examination has some limits as to subject matter and time, the overruling of the defendant's objection was within the discretion of the trial court. "The latitude and extent of cross-examination are within the trial judge's discretion, and his rulings will not be disturbed unless there has been an abuse of such discretion." 2 Wharton, Criminal Evidence (13th Ed.) § 424; see *Papa* v. *Youngstrom,* 146 Conn. 37, 40, 147 A.2d 494. The defendant also claims that the state should not have been allowed to conduct its cross-examination of this witness after he had pleaded the fifth amendment on the ground that an answer might tend to incriminate him. The court did not abuse its discretion in permitting the state to proceed with its cross-examination. "[O]ne not an accused must submit to inquiry . . . and may invoke the privilege only after the potentially incriminating question has been put. Moreover, invoking the privilege does

not end the inquiry and the subject may be required to invoke it as to any or all of an extended line of questions." McCormick, Evidence (2d Ed.) § 136.

On direct examination, the defendant testified that his wife told him that she had been told that he cut up the body of the victim and disposed of it. The next question was: "And who was that who told her?" The state objected and the defense claimed it on the ground of "relevancy" and for "impeachment purposes." The court sustained the objection and an exception was taken. The court properly sustained the objection. Any answer could only have been learned by the witness through hearsay from a person not a party and would, therefore, be inadmissible; *Palombizio* v. *Murphy*, 146 Conn. 352, 356, 150 A.2d 825; nor could a purely hearsay statement be admitted as substantive proof of a fact under the guise of impeaching a witness. 29 Am. Jur. 2d, Evidence, § 500.

On cross-examination Mrs. Saia was asked: "Now, do you recall that he was putting on the tape recorder information concerning the disappearance of Mr. Martinez?" The state objected that defense counsel was the one who was testifying. The objection was sustained. Thereafter, the defense asked the witness: "Do you recall him putting something on tape." The witness replied that she did not recall the circumstances surrounding the tape recording or the substance of what was put on tape. In view of this subsequent inquiry, any error on the previous ruling was harmless.

During direct examination, Earl Mack, a brother of the victim and a witness for the defense, testified that he had had conversations with the defendant regarding the disappearance of Martinez. The

defense then sought to elicit testimony regarding whether the defendant offered any help in attempting to locate Martinez's body. An affirmative response from Mack would have produced a hearsay statement concerning a self-serving declaration of the defendant. The court, therefore, acted within its discretion in sustaining the state's objection to this question. *State* v. *McCarthy,* 133 Conn. 171, 181, 49 A.2d 594; Holden & Daly, Connecticut Evidence §§ 100 (a), 100 (g). Also on direct examination of the defendant by the defense, Saia was asked: "As a result of a conversation with somebody, were you under the impression that no harm had come to Martinez?" Although no attempt was made to advise the court of any claim with respect to the admissibility or inadmissibility of the pending question, any answer would have been based on hearsay. The defendant claims for the first time on appeal that the question sought to elicit admissible evidence of the defendant's intentions. The record shows no facts to substantiate this claim. The court properly sustained the state's objection. *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 596–97, 227 A.2d 548.

There is no error.

In this opinion the other judges concurred.