[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR PROTECTIVE ORDER
This motion for protective order seeks to prevent the defendant's wife from testifying in a deposition in the context of a case where the estate of the defendant's former wife seeks posthumously to annul the previous marriage on the grounds of fraud. The motion presents the issue of whether the common law privilege against spousal testimony is alive and kicking in a civil case in Connecticut.
FACTS
On April 16, 1977, the decedent, Dorothy Jane Britt, married the defendant, Charles Barry Britt. On January 12, 1995, Dorothy Jane Britt passed away. On February 9, 1995, the Bloomfield Court of Probate appointed the plaintiff, Janet DeGruttola, Executrix of the Estate of her mother, Dorothy Jane Britt.
On June 9, 1995, the plaintiff filed this action on the CT Page 150 ground that the defendant allegedly stated under oath on the marriage license that he had previously been married once, where he had actually been married and divorced three times. The plaintiff alleges that Dorothy Jane Britt would not have married the defendant had she known not only that he had been married and divorced three times, but also that he had children from these previous marriages. The plaintiff further alleges that the defendant misappropriated, consigned, and/or converted property belonging to Dorothy Jane Britt. Based on these allegations, the plaintiff seeks an annulment of the marriage of Dorothy Jane Britt as well as the return of any property belonging to Dorothy Jane Britt.
On August 21, 1995, pursuant to Practice Book § 221, the defendant filed a motion for protective order to prevent a scheduled deposition of his wife, Jeanne Malley Britt. On August 28, 1995, the plaintiff filed an objection to the defendant's motion for protective order.
ARGUMENT
The defendant argues that deposing Jeanne Malley Britt would violate her marital privilege against adverse spousal testimony and her confidential-communication privilege. The defendant argues that at common law, Connecticut recognizes the confidential-communication privilege.
The plaintiff argues that while Connecticut has statutorily adopted the common law rule of marital privilege for criminal cases pursuant to General Statutes § 54-84a, Connecticut has not similarly adopted this common law rule with regard to civil cases. In support of this argument, the plaintiff states that she has failed to discover one instance in which this common law marital privilege has been adopted in the civil context. In addition, the plaintiff notes that Wigmore on Evidence rejects the predominant rationale for this privilege, specifically, that one spouse testifying against the other will cause marital discord. Finally, the plaintiff suggests that although Tait LaPlante conclude that Connecticut recognizes the marital privilege against adverse spousal testimony in civil cases, they qualify their recognition by using the word "appears" and that, as a result, Tait LaPlante is not dispositive on this issue.
In response, the defendant argues that the only change CT Page 151 with regard to the common law recognition of the marital privilege against adverse spousal testimony has been made in the criminal context, with the enactment of General Statutes § 54-84a. The defendant further emphasizes that the Connecticut Supreme Court has neither reversed nor overturned the decision in Spitz's Appeal, 56 Conn. 184 (1888), which recognized the marital privilege against adverse spousal testimony.
CONCLUSION
The court concludes that the common law privilege against adverse spousal testimony is applicable in both criminal and civil cases.
First, that privilege and the rationale for that privilege is part of our common law. In Spitz's Appeal fromCommissioners, Id., 184-86, when considering a wife's claim, as a creditor, against the insolvent estate of her deceased husband, the Connecticut Supreme Court noted that at common law, the husband or wife of a party is disqualified as a witness and may not testify against his or her spouse.[1] This common law rule is based on the legal unity of the husband and wife and the prevention of marital discord. Id., 186. See also State v. Saia, 172 Conn. 37, 42, 372 A.2d 144 (1976); 8 J. Wigmore, Evidence § 2228 (McNaughton rev. 1961).[2]
Therefore, "[t]he privilege applies only to those who are husband and wife at the time of the testimony." C. Tait J. LaPlante, Connecticut Evidence, supra, § 12.3.1.
The Supreme Court did not limit this common law rule to either criminal or civil cases. The Court did, however, hold that the marital privilege against adverse spousal testimony does not apply to "actions at law in which the husband and wife have conflicting interests and are opposing parties, as petitions for divorce or suits by the wife seeking protection against the husband, and has no application to suits in equity relating to the wife's separate estate." Spitz's Appeal fromCommissioners, supra, 86 Conn. 184; implicitly recognizing its applicability to civil case. In State v. Saia, supra,172 Conn. 42, the Connecticut Supreme Court again recognized the marital privilege against adverse spousal testimony, stating that "[t]he common-law restriction against adverse marital testimony was founded on the legal unity of the spouses and the policy of preventing discord between them." CT Page 152
Second, the marital privilege has been recognized by our legislative in both criminal and civil matters. Criminally, it has been both codified and excepted as to personal violence in Connecticut General Statutes, Sec. 54-84a. Civilly, it has been recognized by our legislature where its parameters have been circumscribed so as to make it inapplicable in civil support matters and civil child support matters. C.G.S. Sec. 46b-203 and CGS Sec. 17a-101(f)
Third, the ancient roots of the privilege still have recognized vitality legislatively in Connecticut and in today's world despite the assertions of Wigmore that legal and political equality of men and women have made marital privilege an anachronism. Society still recognizes the need for policies that contribute to rather than detract from the marital contract and that recognition is necessary in today's world as it was in the past.
Accordingly, the motion for protective order is granted if properly asserted by the wife.
Barall, J.