[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM ORDER ON MOTION FOR PROTECTIVE ORDER
CT Page 13250
Upon considering the briefs and oral arguments of counsel on plaintiffs' motion for protective order to prevent the deposition of Elaine V. Beckman, wife of plaintiff Charles B. Beckman, M.D., the Court hereby orders that said motion be GRANTED for the following reasons:
1. This is an action by nine plaintiff physicians against defendant Cardiothoracic Vascular Group, P.C. ("CVG"), with which they formerly practiced medicine, and defendants Philip R. Fazzone, M.D. and Vasant Khachane, M.D., who at all times relevant hereto were shareholders, officers and directors of CVG. All nine plaintiffs contend that the defendants paid to themselves substantial sums of money that were collected by CVG for the plaintiffs' work, and which belonged to the plaintiffs. Plaintiffs' claims sound in fraud, breach of fiduciary duty, theft and unjust enrichment.
2. Defendants have asserted over 100 counterclaims, including claims against Dr. Beckman for breach of trust, tortious interference, invasion of privacy, defamation, theft, and breach of contract.
3. On March 19, 1998, defendants noticed the deposition of Mrs. Beckman. Though the notice of deposition does not give any information as to the topics on which Mrs. Beckman is sought to be deposed, the defendants have informed the Court that they wish to question her, inter alia, about: (1) certain personal conversations she may have had with defendant Dr. Khachane and/or CVG accountant, Charles Flaum, CPA, concerning her husband's financial treatment by CVG in the relevant time period; and (2) the circumstances, allegedly witnessed and/or participated in by her, surrounding her husband's alleged entry into and theft of information and/or documents from CVG's business offices, on which certain of defendants' counterclaims against him are based.
4. The plaintiffs claim that Mrs. Beckman cannot be forced to testify adversely to her husband in any Connecticut civil action. In support of this claim, they rely on the common-law privilege against the giving of adverse testimony, first formally recognized by our State Supreme Court in Spitz's Appeal fromCommissioners, 56 Conn. 184, 186 (1888), and recently found to be "alive and kicking" in Connecticut by Judge Herbert Barall, in CT Page 13251DeGruttola v. Britt, No. FA 95-0551058,15 CONN. L. RPTR. 596, 1996 WL 24575 (Conn.Super. Jan. 2, 1996).
5. The defendants oppose the plaintiffs' motion on two basic grounds: (1) that Connecticut has assertedly abrogated the common-law privilege not to testify adversely to one's spouse except in criminal cases, where the privilege, now codified at General Statutes § 54-84a,[1] belongs exclusively to and can only be asserted by the testifying spouse; and (2) that even if the privilege can lawfully be asserted by a non-testifying spouse in a Connecticut civil case, there is no showing here that the testimony sought to be elicited from Mrs. Beckman would be so "adverse" to her husband as to come within the privilege.
6. As Judge Barall aptly put it in DeGruttola v. Britt,supra, the spousal privilege against testifying adversely to one's spouse is still "alive and kicking" in Connecticut civil and criminal cases alike. As the plaintiffs rightly note, the privilege was first recognized by our State Supreme Court inSpitz's Appeal from Commissioners, supra, where the Court described its purpose and scope in the following terms:
 The rule of the common law that the wife shall not testify against the husband is founded upon their legal unity and the policy of preventing discord between them. It is not applicable to actions at law in which the husband and wife have conflicting interests and are opposing parties, as petitions for divorce or suits by the wife seeking protection against the husband, and has no application to suits in equity relating to the wife's separate estate.
There, where a wife had voluntarily testified in support of her claim against the estate of her deceased husband, the Supreme Court ruled that her testimony was properly admitted because her interests and her husband's interests were conflicting with respect to that claim.
The Supreme Court's decision in Spitz's Appeal fromCommissioners is significant in two respects. First, because it explicitly recognized the spousal privilege in the context of a civil proceeding, and only made exceptions to the application of the privilege for civil proceedings when the spouses' interests are conflicting, it clearly established that the privilege applies to all other types of civil proceedings where the spouses' interests are not in conflict. Second, because the claim CT Page 13252 of privilege there at issue was not made by the testifying spouse, its review without comment by the Supreme Court gives compelling evidence that the privilege could be asserted by either spouse, or by their respective privies.
7. The rule of Spitz's Appeal from Commissioners was not abrogated by the later passage of General Statutes § 54-84a
or any of its predecessors, which have long restricted the right to assert the privilege in criminal proceedings to the testifying spouse. This is so because the original version of Section 54-84a, which first imposed the restriction in question, predated the Supreme Court's decision in Spitz's Appeal fromCommissioners, by over twenty years.[2] Plainly, the Supreme Court would not have discussed or based its ruling on an exception to a common-law rule had it believed that the rule was abrogated by statute twenty years before. Accord, Tait andLaPlante's Handbook of Evidence (2d Ed. 1988) § 12.3.4, p. 437 (citing Spitz's Appeal from Commissioners for the proposition that, "Connecticut appears to follow the common-law rule that a spouse has a right not to testify against the other spouse in a civil action.")
8. The next time the Connecticut Supreme Court comprehensively addressed the question of spousal privileges was in State v. Saia, 172 Conn. 37, 42-44, 372 A.2d 144 (1976). There, in a criminal case where the defendant's wife testified against him voluntarily despite warnings that she need not do so, the Court identified three distinct issues raised by the prospect of adverse spousal testimony:
 (1) a spouse's disqualification as a competent witness, (2) a defendant spouse's privilege against adverse marital testimony, and (3) the privilege of confidential communications between spouses.
Id. at 42. "At early common law," the Court observed, "the husband or wife of a party was disqualified as a witness and prevented from testifying either for or against the party in any case, either civil or criminal." Id. at 42. In Connecticut, however, the Court duly noted, that the bar against all spousal testimony was lifted by statute. Citing Spitz's Appeal fromCommissioners, supra, the Court noted particularly that:
 common-law restriction against adverse spousal testimony was founded on the legal unity of the spouses and the CT Page 13253 policy of preventing discord between them. Spitz's Appeal, 56 Conn. 184, 186, 14 A. 776 [1886]. The jurisdictions which, like Connecticut, have statutorily limited this restriction on adverse spousal testimony by allowing only the witness spouse to invoke a privilege to refuse to render such testimony have done so apparently on the theory that the witness spouse should be permitted to determine whether the marriage can or should be saved by a refusal to testify.
State v. Saia, supra, 172 Conn. at 43. Because the defendant's wife in the case before it had been informed of her right to testify and specifically stated that she understood that right and wished to waive it, the admission of her testimony was upheld.
9. The Saia case well demonstrates the interplay between the common-law privilege against giving adverse spousal testimony and the statutory restrictions upon that privilege now embodied in General Statutes § 54-84a. That statute, like its predecessors, modifies the privilege in criminal cases only, by requiring that it be asserted, in such cases, by the testifying spouse. Consistent, however, with the well-settled rule that statutes in derogation of the common law must be strictly construed, Yale University School of Medicine v. Collier,206 Conn. 31, 37, 536 A.2d 588 (1988), Section 54-84a, like its many predecessors, must not be read to limit or restrict the common law privilege in any other case to which it is applicable under the rule of Spitz's Appeal from Commissioners. That rule still applies, without restriction or limitation, to most Connecticut civil cases.
10. Against this background, it is not surprising that our legislature has implicitly acknowledged the continuing vitality of the common-law privilege against adverse spousal testimony in civil cases by making explicit exceptions to its application in civil support and child support proceedings. See General Statutes §§ 46b-203 and 17a-101(f). When the legislature passes a statute, it is presumed to be aware of existing law. By making an exception to that which was unquestionably a common law rule or doctrine, the legislature gives clear notice that in its view, the rule or doctrine is still in force.
11. Finally, the Court rejects the defendants' argument that the testimony that they seek to elicit from Mrs. Beckman is not CT Page 13254 necessarily adverse to her husband, plaintiff Dr. Beckman. This assertion is flatly contradicted by counsel's candid descriptions of the intended areas of inquiry — conversations between Mrs. Beckman and officers or agents of CVG regarding CVG's financial arrangements with her husband and Mrs. Beckman's account of her husband's alleged break-in at and theft or documents or other information from CVG's business offices. Testimony about the former would quite possibly undermine Dr. Beckman's claims as to the state of her own knowledge as to the state of his own knowledge as to how he would be paid for his work and what, if any, differences there were in compensation packages between corporate shareholders and others. Testimony about the latter could help the defendants establish the elements of their counterclaims, and in so doing prove that Dr. Beckman had committed one or more criminal acts. It is simply nonsense that such testimony would be anything but adverse to Dr. Beckman.
12. For all of the foregoing reasons, the Court concludes that the plaintiffs' motion for protective order must be GRANTED. In so ruling, however, the Court hereby gives fair notice to the plaintiffs that they may not rely for any purpose on statements made to them by Mrs. Beckman or on any other information for which Mrs. Beckman must provide an essential testimonial link. To call her to testify at trial, or to rely upon her words or actions for any evidentiary purpose, after preventing the defendants from gaining access to her by deposing her, would be unfair and unreasonable. Such a course will not be tolerated in this case.
MICHAEL R. SHELDON, J.