## STATE OF CONNECTICUT *v.* MARCUS FAIR
## (AC 28464)

DiPentima, Gruendel and Borden, Js.

---

520

Argued September 18—officially released November 27, 2007

*Richard W. Callahan*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, *Vicki Melchiorre*, senior assistant state's attorney, and *Chris Pelosi*, assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Marcus Fair, appeals from the judgment of conviction, rendered after a jury

trial, of murder in violation of General Statutes § 53a-54a[1] and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1).[2] He alleges instructional impropriety and evidentiary error. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the late evening of January 13, 2004, Dwayne Knowlin and Joshua Mims left Knowlin's home on Nelson Street in Hartford to get something to eat. As they walked home, the defendant approached. The defendant wore a black mask that concealed his head; his face was visible from his lips to his eyebrows. The defendant stopped in front of Knowlin and Mims, took out a black revolver and opened fire. Knowlin and Mims immediately ran. After jumping a fence and with the defendant no longer in sight, Knowlin collapsed, informing Mims that he was shot. Knowlin's breathing became labored, and Mims called for an ambulance. Knowlin died that evening.[3]

The next day, Howard Fair, the uncle of the defendant, heard rumblings from family members that the defendant was involved in the shooting. He confronted the defendant, who admitted to shooting Knowlin. The defendant explained that he "had a beef" with the "kids on Nelson Street" and alleged that they had shot at him and his cousin a month earlier. The defendant told his uncle that he wanted revenge. As Howard Fair recounted, the defendant stated that "he was going to

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm or electronic defense weapon when such person possesses a firearm or electronic defense weapon and (1) has been convicted of a felony . . . ."

[3] Harold Wayne Carver II, the state's chief medical examiner, testified that the cause of Knowlin's death was "a gunshot wound of the chest and abdomen."

get back at them, no one in particular, just said he's gonna, you know, they shot at him so he's going to go shoot back at them." Fearing for his nephew's safety, Howard Fair encouraged the defendant to turn himself in to the authorities. On January 16, 2004, the defendant and his uncle entered the Hartford police department. At that time, Howard Fair gave a statement implicating the defendant in Knowlin's death, and the defendant was arrested. The police subsequently presented a photographic array to Mims, who immediately identified the defendant as the shooter. At trial, Mims testified that he had known the defendant for approximately five years and that he observed the defendant's face "a whole minute" before the shooting.

Following trial, the jury found the defendant guilty of both murder and criminal possession of a firearm, and the court rendered judgment accordingly. The defendant was sentenced to a total effective term of sixty-five years imprisonment. From that judgment, the defendant now appeals.

I

The defendant claims that the court improperly "failed to give a requested instruction on the limited use of the defendant's prior felony conviction." We do not agree.

The following additional facts are relevant to the defendant's claim. In order to obtain a conviction of criminal possession of a firearm in violation of § 53a-217 (a) (1), the state was required to prove, inter alia, that the defendant had been convicted of a felony prior to the events of January 13, 2004. At trial, the following stipulation was presented to the jury: "The defendant and [the] state stipulate and agree to the following facts regarding [c]ount [t]wo of the [s]tate's [i]nformation. [The defendant] was previously convicted of a felony [that] was properly recorded, and judgment entered on

August 14, 2002."[4] Following the close of evidence, the defendant submitted a request to charge that included a limiting instruction concerning that stipulation.[5] Thereafter, the court instructed the jury as follows: "Stipulation. State's exhibit thirty-five is a stipulation between the parties. This means that the parties agree to the facts contained in the stipulation even though no evidence was introduced about them. The parties agree that regarding count two of the information, the defendant was previously convicted of a felony and that such conviction was properly recorded and judgment entered on August 14, 2002. Any facts to which the parties have stipulated or agreed you will treat as proven. However, it is still up to you to decide what weight or importance those facts or evidence have, if any, in deciding the guilt or nonguilt of the defendant with respect to ground two. Multiple charges. The accused is charged in two counts. You will have noted that each charge against the accused is set forth in the information in a separate paragraph. That is legal language for saying that the accused is charged with committing two separate offenses or crimes. Each count alleges a separate crime for convenience of the trial in one formal charge or information. It will be your duty to consider each charge or count separately. If you conclude that the defendant is guilty of one particular count, then you cannot automatically conclude that he must be guilty of the other count, as that would be a violation of your duties and oath as a juror."

After concluding its instructions, the court specifically inquired as to whether the defendant had any

---

[1] In addition, the stipulation was entered into evidence as an exhibit. That exhibit indicated that the stipulation pertained to count two of the information.

[5] The request to charge provided in relevant part that "evidence [of the prior conviction] is not relevant, and does not relate, to the charge of murder as alleged in the first count of the state's information. . . . It is not related to the first count of the information in any way."

objections. Counsel for the defendant stated: "Your Honor, not an objection, but we did file a request and it was, basically, for a limiting instruction . . . on count two in regard to the . . . stipulated felony that it not be applied, in any way, to count one. I'm reading quickly—I was listening and reading quickly through the court's charge. I don't believe there was that particular limiting instruction." The court replied: "No, I think I did mention there, too, that . . . the charge on multiple charges, where I instruct them that they must evaluate each count separately, will take care of that." Although the defendant did not disagree with that assertion at trial, he does so now.

The standard of review for claims of instructional impropriety is well established. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . [W]e must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003).

Although the defendant maintains that no limiting language was included in the court's instructions, the transcript reveals otherwise. The court specifically instructed the jury on the stipulation concerning the defendant's prior felony conviction, stating in relevant part that "[t]he parties agree that *regarding count two*

*of the information*, the defendant was previously convicted of a felony . . . . [I]t is still up to you to decide what weight or importance those facts or evidence have, if any, *in deciding the guilt or nonguilt of the defendant with respect to ground two.*" (Emphasis added.) Moreover, the court explained to the jury that the defendant was charged in two counts and that it was "your duty to consider each charge or count separately." Those instructions together adequately addressed the concern raised in the defendant's request to charge. Viewing the charge as a whole, we conclude that it is not reasonably possible that the jury was misled into applying the stipulation to the murder charge contained in count one of the information. To the contrary, we presume that the jury followed the court's instructions and considered the stipulation only with respect to count two of the information. See *State* v. *Clark*, 264 Conn. 723, 734, 826 A.2d 128 (2003).

## II

The defendant also claims that the court abused its discretion in excluding evidence of prior inconsistent identification statements by Mims. The standard of review governing that claim is well settled. "The admissibility of evidence, including the admissibility of a prior inconsistent statement . . . is a matter within the . . . discretion of the trial court. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by [an appellate] court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Corbin*, 260 Conn. 730, 736–37, 799 A.2d 1056 (2002).

Generally, the credibility of a witness may be impeached by evidence of a prior inconsistent statement made by the witness. See *State* v. *Avis*, 209 Conn.

290, 302, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *Beardsley* v. *Wildman,* 41 Conn. 515, 516 (1874). Under our rules of evidence, it is necessary to lay a foundation prior to examining a witness about the allegedly prior inconsistent statement. Conn. Code Evid. § 6-10 (b) ("[i]n examining a witness concerning a prior inconsistent statement, whether written or not, made by the witness, the statement should be shown to or the contents of the statement disclosed to the witness at that time"). Indeed, "Connecticut favors the laying of a foundation . . . ." Id., commentary. "The purposes of [that] requirement are to avoid unfair surprise to the adversary; to save time, since an admission by the witness may make extrinsic proof unnecessary; and to give the witness a fair chance to explain the discrepancy." 1 C. McCormick, Evidence (6th Ed. 2006) § 37, p. 158.

Our rules of evidence also specifically address the situation in which a party seeks to introduce extrinsic evidence of a prior inconsistent statement. Section 6-10 (c) of our evidence code provides that "[i]f a prior inconsistent statement made by a witness is shown to or if the contents of the statement are disclosed to the witness at the time the witness testifies, and if the witness admits to making the statement, extrinsic evidence of the statement is inadmissible, except in the discretion of the court. If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of the court." In *State* v. *Saia,* 172 Conn. 37, 372 A.2d 144 (1976), our Supreme Court expounded on that precept: "The impeachment of a witness by extrinsic evidence is somewhat limited. Not only must the inconsistent statements be relevant and of such a kind as would affect the credibility of the witness . . . but generally

a foundation should be laid at the time of cross-examination. . . . In this state, we have no inflexible rule regarding the necessity of calling the attention of a witness on cross-examination to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him. From early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." (Citations omitted.) Id., 45–46; accord *State* v. *Butler*, 207 Conn. 619, 626, 543 A.2d 270 (1988).

After the state presented its case-in-chief, the defendant called his sole witness, Officer Sylvia Hernandez of the Hartford police department. During direct examination, counsel for the defendant attempted to introduce evidence of four statements made by Mims to Hernandez concerning his description of the shooter. Specifically, the defendant sought to introduce extrinsic evidence that (1) Mims described the shooter as having a "medium complexion," (2) Mims described the shooter's mask as a "black mask," (3) Mims described the shooter as "all dressed in black" and (4) Mims described the shooter as a "black Jamaican male." Because the defendant confronted Mims with the fourth statement during cross-examination, the court permitted the defendant to question Hernandez about Mims' description of the shooter as a "black Jamaican male." As to the first three statements, the court noted that neither the statements nor the contents thereof were disclosed to Mims at the time he testified. It stated: "You had the opportunity to impeach him with that when he was here, and you didn't do it. Now you want to impeach him through an independent witness without having

impeached him when [he testified]." Accordingly, the court excluded evidence of those statements.

Our thorough review of the record and the respective arguments of the parties persuades us that the court's determination was proper. The defendant had ample opportunity to confront Mims with the aforementioned extrinsic evidence and chose not to do so. We are mindful that "[t]he trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." *State* v. *Saia*, supra, 172 Conn. 46. The court did not abuse that discretion in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.