STATE OF CONNECTICUT *v.* JOHN L. MOALES
(14456)

Foti, Heiman and Schaller, Js.

Argued February 29—officially released June 25, 1996

*H. Jeffrey Beck*, for the appellant (defendant).

*Denise B. Smoker*, deputy assistant state's attorney, with whom were *Donald A. Browne*, state's attorney, and, on the brief, *Cornelius P. Kelly*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), robbery in the second degree in violation of General Statutes § 53a-135 (a) (1), larceny in the second degree in violation of General Statutes § 53a-123 (a) (1), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3), and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). The defendant claims that the trial court (1) improperly refused to allow a defense witness to testify about prior inconsistent statements made by the state's primary witnesses and (2) violated the defendant's constitutional right not to have uncharged offenses presented to the jury. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On January 11, 1994, the defendant and Jose Baez smoked crack cocaine at a "crack house" on Stratford Avenue in Bridgeport. On the morning of January 12, 1994, the defendant and Baez left the house and entered a Ford Bronco. The defendant started the Bronco with a screwdriver, and the two men rode to a house at 88 Dean Place. After the defendant parked the vehicle, both men entered the house. Cynthia Lucero was inside the house. The defendant charged toward Lucero, punched her and pushed her to the floor. He pulled the hood of Lucero's sweatshirt over her head, held a hard object against her head, and told her that he would kill her if she moved. The defendant asked Lucero if she had any money or gold, and Lucero responded that she did not have any gold and that her money was in her wallet located on the porch of the house. The defendant found the wallet and took $50 from it. He then went upstairs and took a cigar box filled with change, a broach and a watch. The defendant told Baez to watch Lucero, to check her for gold, and to kick her in the

head if she moved. Baez took two bracelets and some change from Lucero, and then he saw Lucero's neighbor outside writing down the license plate number of the Bronco. The defendant and Baez left the premises and fled in the Bronco.

The defendant and Baez drove to another house and smoked crack. They left the house and drove around until the Bronco ran out of gas. They walked to a gas station, filled an empty soft drink bottle with $1 worth of gas and returned to the Bronco to fuel the tank. While Baez went to get something to eat, the defendant went to a pawn shop on East Main Street owned by Juan Rivera and sold the bracelets and change to Rivera. The defendant and Baez then smoked crack and spent the night in the Bronco. The police saw the two men sleeping in the Bronco, determined that the vehicle had been stolen, and arrested the defendant and Baez.

On January 14, 1994, the police visited Rivera at his pawn shop. Pursuant to a search and seizure warrant, Rivera turned over to the police the bracelets and change that the defendant and Baez had taken from Lucero. Rivera told the police that the defendant had sold the items to him.

I

The defendant claims that the trial court improperly refused to allow a defense witness to testify about prior inconsistent statements made by the state's primary witnesses. The defendant asserts that the trial court's refusal was an abuse of discretion and a violation of the defendant's constitutional right to present a defense. We do not agree.

The following additional information is necessary to a resolution of this issue. At trial, the state called as witnesses Baez and Rivera, both of whom were extensively cross-examined by the defendant. Following the

state's case-in-chief, the defendant called Richard Fox as a witness. Fox, a criminal investigator employed by the defendant, was prepared to testify about statements that Baez and Rivera had made to Fox in the fall of 1994. According to the defendant, these prior statements were inconsistent with statements made by Baez and Rivera at trial and were admissible to impeach them. The defendant also asserted that if Fox was not allowed to testify about the prior statements, the defendant's right to present a defense would be jeopardized.

In the absence of the jury, the defendant made a lengthy offer of proof regarding the claimed prior inconsistent statements. First, the defendant questioned Fox about statements that Baez had made to Fox on November 15, 1994. The defendant asserted that Fox's testimony would establish that Baez' statements to Fox on November 15, 1994, were inconsistent with Baez' trial testimony. The prior inconsistent statements that Baez allegedly had made to Fox were about the details of the activities of Baez and the defendant from January 11 to January 13, 1994.[1] Next, the defendant questioned Fox about statements that Rivera had made to Fox on September 27, 1994. The defendant claimed that Fox's testimony would establish that Rivera's statements to Fox on September 27, 1994, were inconsistent with Rivera's trial testimony. The prior inconsistent state-

---

[1] The defendant claimed that Fox's proffered testimony would reveal prior inconsistent statements made by Baez regarding whether: (1) the crack house was on Stratford Avenue or Boston Avenue, (2) the Bronco was stolen a few days or one week before the incident in question, (3) Baez or the defendant knocked on the door of the Lucero house, (4) Baez said anything to Lucero, (5) Baez looked through Lucero's purse, (6) Baez put Lucero's bracelets in his pocket or put them on a table in the house after taking them from Lucero, (7) Baez ran or quickly walked from the Lucero house, (8) Baez tried to leave the Lucero house without the defendant, (9) Baez said good-bye to Lucero, (10) Baez and the defendant went to Father Panik Village to get some crack after leaving Lucero's house, and (11) the Bronco ran out of gas once or twice.

ments that Rivera allegedly had made to Fox related to whether Rivera remembered that the police visited the pawn shop and seized the bracelets and change sold to him by the defendant.[2] The trial court ruled that Fox would not be permitted to testify about the claimed inconsistent statements made by the witnesses to Fox because the statements were not substantial and did not relate to material matters.

## A

We first examine the defendant's claim that the trial court abused its discretion in refusing to permit Fox's testimony. "It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. *State* v. *Keating*, 151 Conn. 592, 597, 200 A.2d 724 [1964], cert. denied sub

---

[2] During the offer of proof, the defendant also claimed that Fox's testimony would establish that Rivera told Fox that he (1) had no record of a January, 1994 transaction with the defendant and could not remember the transaction and (2) did not know the defendant. These statements made by Rivera to Fox, according to the defendant, were inconsistent with Rivera's testimony at trial.

The trial court did not allow Fox to testify about the first statement. During his offer of proof, the defendant conceded that according to Rivera's testimony, the reason Rivera told Fox that he had no record of a transaction with the defendant was because Rivera, during Fox's visit to the pawn shop, had examined only *some* of the records and *could not find* a record of the transaction. Furthermore, Rivera testified that he found the record of the defendant's transaction *after* speaking with Fox and consequently remembered the transaction. Thus, Fox's testimony would not have revealed an inconsistent statement made by Rivera regarding whether he had a record of the defendant's transaction or was able to remember the transaction. "It is axiomatic that for a statement to be admissible as a prior inconsistent statement it must be inconsistent with the testimony of the party at trial." *Drew* v. *K-Mart Corp.*, 37 Conn. App. 239, 249, 655 A.2d 806 (1995).

The trial court allowed Fox to testify about Rivera's statement that he did not know the defendant. The trial court allowed the testimony because on direct examination, Rivera indicated that he did know the defendant. Thus, Rivera's inconsistent statements regarding whether he knew the defendant were disclosed to the jury.

nom. *Joseph* v. *Connecticut*, 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 [1965]; *State* v. *Walters*, [145 Conn. 60, 66, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45 (1958)]; Holden & Daly, Connecticut Evidence § 125 (d). This is based on the notion that talking one way on the stand, and another way previously, raises a doubt as to the truthfulness of both statements. See McCormick, Evidence (2d Ed.) § 34." *State* v. *Saia*, 172 Conn. 37, 45, 372 A.2d 144 (1976). "The impeaching statement may be oral . . . or written." (Citations omitted.) *State* v. *Butler*, 207 Conn. 619, 626, 543 A.2d 270 (1988).

"Where a party seeks to impeach a witness by using extrinsic evidence, certain standards must be met. The inconsistent statement must be relevant and of such a kind as would affect the witness' credibility, and, generally, a foundation for introducing the statement should be laid at the time of cross-examination of the witness."[3] Id.; see also *State* v. *Saia*, supra, 172 Conn. 45–46. "[T]he inconsistency must be *substantial* and relate to a *material matter*." (Emphasis in original.) *State* v. *Richardson*, 214 Conn. 752, 763, 574 A.2d 182 (1990); see also *Drew* v. *K-Mart Corp.*, 37 Conn. App. 239, 249, 655 A.2d 806 (1995). "The trial court is vested with wide discretion as to what may be admitted as a prior inconsistent statement for impeachment purposes. . . . That discretion will not be disturbed unless it has been abused." (Citations omitted.) *State* v. *Richardson*, supra, 764.

We conclude that the trial court did not abuse its discretion in not permitting Fox to testify about the

---

[3] We note that "[i]n this state, we have no inflexible rule regarding the necessity of calling the attention of a witness on cross-examination to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him. From early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid." *State* v. *Saia*, supra, 172 Conn. 46.

prior inconsistent statements made by Baez and Rivera. Baez' supposed prior inconsistent statements to Fox[4] were about trivial discrepancies relating to facts that were immaterial to the jury's resolution of the case. The statements that Rivera allegedly had made to Fox regarding Rivera's memory of the police having visited his pawn shop and seizing Lucero's belongings may have been inconsistent with his trial testimony, but Rivera's memory of the police investigation was not relevant to the issue of whether the defendant committed the crimes with which he stood charged. It was the evidence of the results of the police investigation, not Rivera's memory of the investigation, that was relevant to the jury's findings. Thus, the trial court properly exercised its broad discretion in ruling that Fox's testimony would not be admissible because it would not reveal inconsistent statements that were substantial and that related to material matters.

B

We next address the defendant's claim that the trial court violated his constitutional right to present a defense by refusing to permit Fox to testify about the prior inconsistent statements made by Baez and Rivera. This claim is without merit.

Although the defendant raises a constitutional claim, we conclude that in doing so, he is merely masking an evidentiary claim with a constitutional veil. Prior to his attempt to introduce Fox's testimony, the defendant had an adequate opportunity fully to cross-examine Baez and Rivera regarding any prior inconsistent statements that they may have made to Fox. The purpose of the defendant's attempt to introduce Fox's testimony was further to impeach the credibility of Baez and Rivera. As we have concluded, however, the trial court applied the proper evidentiary standard and exercised

---

[4] See footnote 1.

its sound discretion in refusing to allow Fox's testimony regarding the statements. Under these circumstances, that refusal did not implicate the defendant's constitutional right to present a defense. Cf. *State* v. *Torres*, 210 Conn. 631, 642–43, 566 A.2d 1013 (1989) (improper exclusion of prior inconsistent statements proffered by defendant was error that "escalated to constitutional proportions" because trial court's ruling was not "evenhanded"). "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error. In this instance, the defendant has put a constitutional tag on a nonconstitutional claim. *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982)." *State* v. *Vitale*, 197 Conn. 396, 403, 497 A.2d 956 (1985). "[I]n the exercise of his sixth amendment right to compulsory process the accused, as required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (Internal quotation marks omitted.) *State* v. *Stange*, 212 Conn. 612, 625, 563 A.2d 681 (1989).

The defendant's constitutional claim is without merit.

## II

The defendant also claims that the trial court violated his constitutional right not to have uncharged offenses presented to the jury. We do not agree.

The following additional information is necessary to a resolution of this claim. The state charged the defendant with burglary in the first degree by an amended substitute information. In count one of the information, the state alleged that "[the defendant] did *enter* a building, the property of one Cynthia Lucero, with intent to commit a crime therein, and in the course of committing the offense, [the defendant] intentionally inflicted bodily injury upon Cynthia Lucero, in violation of General Stat-

utes § 53a-101 (a) (2)."[5] (Emphasis added.) In its jury instructions, the trial court charged with respect to both the *entering* and *remaining* aspects of § 53a-101 (a). The defendant objected to the instructions on the ground that he was not charged with *remaining* unlawfully in Lucero's house. The trial court declined to give a corrective instruction.

The defendant asserts that because the state charged him under the *entering* clause of the burglary statute and not the *remaining* clause, the trial court's instruction enlarged the charged offense and thereby permitted the jury to convict him on the basis of an uncharged portion of the statute in violation of his rights under article first, § 8, of the Connecticut constitution and the sixth amendment to the United States constitution. We are unpersuaded.

"It is well established that '[w]here, as here, the trial court's charge . . . included both the "enters unlawfully" and the "remains unlawfully" statutory language, each of which may be an element of the crime of burglary; and where the information restricted the offense to "entering unlawfully" and no amendment was requested . . . the trial court erred in instructing the jury on the "remains unlawfully" disjunctive element of burglary.' . . . *State* v. *Belton*, 190 Conn. 496, 502, 461 A.2d 973 (1983). 'To prevail, however, the defendant must demonstrate that the court's instruction resulted in unfair surprise or somehow prejudiced the preparation of his defense. *State* v. *Franko*, [199 Conn. 481, 490, 508 A.2d 22 (1986)].' *State* v. *Peterson*, 13 Conn. App. 76, 84, 534 A.2d 1237 (1987)." *State* v. *Mankus*, 16 Conn. App. 184, 187, 547 A.2d 84, cert. denied, 210 Conn.

---

[5] General Statutes § 53a-101 (a) provides in pertinent part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

801, 553 A.2d 616 (1988). Ultimately, we must determine whether it is reasonably possible that the jury was misled. *State* v. *Belton*, supra, 502.

The defendant has failed to demonstrate how the trial court's instructions either caused him unfair surprise or prejudiced the preparation of his defense. He essentially asserts that the trial court's instructions could have led the jury to consider the uncharged offense in determining that he was guilty of burglary in the first degree. He does not specifically indicate whether he was unfairly surprised or whether he was prejudiced in the preparation of his defense.

We conclude that the defendant was not unfairly surprised by the trial court's instructions and that the preparation of his defense was not prejudiced by the instructions. Much of the evidence introduced at trial established that the defendant did not have Lucero's permission either to enter *or* to remain in the house. This evidence was introduced without objection from the defendant. Thus, the defendant could not have been unfairly surprised by the trial court's instruction. See *State* v. *Franko*, 199 Conn. 481, 490–91, 508 A.2d 22 (1986). Moreover, the defendant's only defense at trial was one of mistaken identity. By claiming that he was not the person who had committed the crimes charged, the defendant put forth a defense that, if believed by the jury, would have led to an acquittal of both entering and remaining unlawfully in the house. See *State* v. *Mankus*, supra, 16 Conn. App. 190. "Under these circumstances, where the defendant's defense encompassed both the charged and uncharged theories of liability, and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the trial court's instruction." (Internal quotation marks omitted.) Id.,

190.[6] Thus, the defendant was not prejudiced in the preparation of his defense. It is not reasonably possible that the jury was misled.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We note that our Supreme Court's decision in *State* v. *Belton*, supra, 190 Conn. 500–504, involving a similar claim but reaching a contrary result, is distinguishable as to its facts and as to the ultimate effect on the verdict of the trial court's improper charge, and, therefore, that case is not controlling here. See *State* v. *Mankus*, supra, 16 Conn. App. 191–92.