STATE OF CONNECTICUT *v.* JOSEPH PARE
(AC 23066)

Foti, Dranginis and Flynn, Js.

Argued January 7—officially released March 11, 2003

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, was *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Joseph Pare, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[1] On appeal, the defendant claims that the trial court improperly (1) allowed evidence of a prior statement by the defendant, which was contained in his medical records, for purposes of impeachment, (2) instructed the jury on reasonable doubt and (3) instructed the jury on the presumption of innocence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, who had a history of psychiatric problems that included depression and drug addiction, lived with the victim, Michelle Devine, at an apartment on Legion Avenue in New Haven. Devine, an alcoholic, upset the defendant with her drinking problems, and they argued frequently about her actions. On September

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

9, 1996, around 10 p.m., the defendant hid a bottle of vodka in the apartment, which caused a fight between the two. Devine pulled the defendant's hair and punched him; he, in turn, started choking her. At some point, the defendant pulled a bathrobe belt tightly around her neck for several minutes until she fell to the floor. He then picked her up and placed her on a bed.

The defendant left the apartment about 2 a.m. on September 10, 1996, and returned at approximately 3:15 a.m. after having consumed some beer and having used cocaine and marijuana. When he received no response from the victim, he turned on the night-light and shook her. He then noticed marks on her neck and discovered that she was dead. At around 5:30 a.m., he went to the police station and told the police that he had "choked the shit out of" his girlfriend. He also stated that he had "never hit a woman before." The defendant, after being advised of his rights, later gave a formal statement admitting that he had strangled Devine.

The police found no signs of a struggle in the apartment. They observed and photographed a maroon bathrobe belt lying at the foot of the bed where the victim was found. It later was determined that the victim's death was caused by ligature strangulation and that the item used was a soft instrument like the belt observed at the crime scene. Additional facts will be set forth as necessary.

I

The defendant claims that the court abused its discretion in allowing as evidence his admission in his medical record that he had assaulted his niece.

The facts relevant to that claim are as follows. The defendant in 1997 initially was convicted of murdering Devine, but our Supreme Court reversed his conviction and remanded the matter for a new trial. *State* v. *Pare,*

253 Conn. 611, 755 A.2d 180 (2000). The defendant elected to testify during his first trial,[2] at which time he again claimed that he "had never put [his] hands on a female in [his] life, never." He also had testified that after killing Devine, he was so emotionally upset by his actions that he sat in the apartment "rocking [and] crying" for almost one and one-half hours before going to the police.[3]

In the defendant's second trial, during the state's case-in-chief, and after testimony by a police officer as to the defendant's statements at the police station that he had "choked the shit out of" his girlfriend and that he had "never hit a woman before," the state sought to introduce a page from the defendant's medical record from the Connecticut Mental Health Center. The medical record indicated that the defendant had stated that he "went to [his] niece looking for money she was holding for [him] and assaulted her when she would not give him [the] money."[4]

After overruling the defendant's objection to the admission of that evidence, the court immediately instructed the jury that it was to be considered "only on the issue of the credibility of the defendant in terms of your evaluation of his statements that have been received into evidence in this case. The evidence in the statement that's going to be read here is not to be considered for the truth of the matter asserted in the statement itself. This evidence may only be used for the limited purpose of evaluating the credibility of the defendant's statements and for no other purpose."

[2] The defendant chose not to testify at his second trial.

[3] The defendant's testimony from his first trial was read in full to the jury during his second trial. There is no issue on appeal relative to that procedure.

[4] That particular document was not introduced at the first trial; the state noted that it was not aware of that evidence until it subpoenaed and received the defendant's medical record for the second trial.

At the outset, we set forth our standard of review of a challenge to a trial court's determination of evidentiary matters. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 133, 773 A.2d 965 (2001). "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Lomax*, 60 Conn. App. 602, 607–608, 760 A.2d 957, cert. denied, 255 Conn. 920, 763 A.2d 1042 (2000).

In claiming that the court abused its discretion by allowing him to be impeached with his prior inconsistent statement, the defendant again raises the three arguments previously rejected by the court. Specifically, the defendant argues that (1) the state did not lay a proper foundation for the redacted medical record as a prior inconsistent statement because he was not confronted with it, (2) there was no corroboration that the statement was true and (3) the probative value of the statement was outweighed by its prejudicial effect. We disagree with all three assertions.

A

The defendant first argues that because he did not testify at the second trial, he was not "confronted"

with the statement as is required by § 6-10 (b) of the Connecticut Code of Evidence.[5] He ignores § 8-8 of the Connecticut Code of Evidence, however, which provides in relevant part that "[e]vidence of a statement of the declarant made at any time, inconsistent with the declarant's hearsay statement, need not be shown to or the contents of the statement disclosed to the declarant." Section 8-8 specifically allows that "[w]hen hearsay has been admitted in evidence, the credibility of the declarant may be impeached, and if impeached may be supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." We see no conflict between the two sections, nor did the drafters of the code of evidence.[6]

---

[5] Section 6-10 (b) of the Connecticut Code of Evidence provides: "In examining a witness concerning a prior inconsistent statement, whether written or not, made by the witness, the statement should be shown to or the contents of the statement disclosed to the witness at that time."

[6] The commentary to § 8-8 of the Connecticut Code of Evidence provides in relevant part: "Treating the hearsay declarant the same as an in-court witness would seem to pose a problem when impeachment by inconsistent statements is employed. Section 6-10 (b) provides that when examining a witness about a prior inconsistent statement, 'the statement should be shown . . . or [its] contents . . . disclosed to the witness at that time.' The hearsay declarant often will not be a witness, or at least, not on the stand when the hearsay statement is offered and thus showing or disclosing the contents of the inconsistent statement to the declarant will be infeasible, if not impossible. Thus, the second sentence in Section 8-8 relieves the examiner from complying with the common-law rule; see Section 6-10; that gives the court discretion to exclude the inconsistent statement when the examiner fails to lay a foundation by failing to first show the statement or disclose its contents to the witness. E.g., *State* v. *Butler*, 207 Conn. 619, 626, 543 A.2d 270 (1988). The effect is to remove that discretion in the Section 8-8 context.

"By using the terminology '[e]vidence of a statement . . . *made at any time*' . . . [§] 8-8 recognizes the possibility that impeachment of a hearsay declarant may involve the use of subsequent inconsistent statements—when the inconsistent statement is made after the hearsay declaration—rather than the more common use of prior inconsistent statements. See generally *State* v. *Torres*, [210 Conn. 631, 635–40, 556 A.2d 1013 (1989)] (statements made subsequent to and inconsistent with probable cause hearing testimony, which was admitted at trial, were used to impeach hearsay declarant)." (Emphasis in original.)

Section 6-10 (b) applies to a hearsay declarant who is a witness, whereas § 8-8 applies to a hearsay declarant who is not a witness or who is not testifying. Clearly, under § 8-8 the fact that the defendant did not testify at the second trial did not preclude the court from allowing the state to impeach the defendant's hearsay statements, both to the police and in his prior testimony, without first confronting him with his admission in his medical record.

B

The defendant next argues that the court should not have allowed as evidence the redacted medical record because the state failed to demonstrate that the statement therein was true. We do not agree that the state had such a burden.

The purpose of impeaching the credibility of a hearsay declarant is merely to show that he or she talked one way at one point in time and a different way on a previous occasion, which could give rise to a doubt as to the truthfulness of both statements. See *State* v. *Saia,* 172 Conn. 37, 45, 372 A.2d 144 (1976) (witness talking one way on witness stand and another way previously raises doubt as to truthfulness of both statements); see also *State* v. *Moales,* 41 Conn. App. 817, 822, 678 A.2d 500, cert. denied, 239 Conn. 908, 682 A.2d 1011 (1996). We view the purpose of impeachment to be identical for either a witness on the witness stand or, as here, a hearsay declarant. We therefore conclude that it matters not whether either of the declarant's statements is true; having given two different statements at two different times allows the first statement to be admissible as impeachment evidence regardless of truthfulness.

C

The defendant also argues that the statement's probative value was minimal and that the court failed to

conduct the proper balancing test before admitting that evidence. He argues that because there were so many other areas in which he was impeached in "much more relevant" fashion, the probative value of his prior statement regarding the niece was minimal. The defendant also opines that the court failed to consider the prejudicial impact that evidence would have on the jury, that is, that it would cause the jurors to believe that he was in fact a violent man.

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 329–30, 746 A.2d 761 (2000).

We agree with the state that under the particular facts and circumstances of this case, the court did not abuse its discretion in concluding that the probative value of the statement contained in the defendant's redacted

medical record outweighed any prejudicial effect that it may have had.

In admitting the redacted medical record, the court ruled that "the defendant articulated both to the police, in his statement to the police officers, and in his testimony, a reason for his conduct immediately after the incident, and this evidence is inconsistent with that for the jury to consider in terms of whether the defendant's statement that he was shocked by getting involved in a—in a physical altercation with a woman and that shock affected him immediately after the incident with Ms. Devine, whether the jury is entitled to consider other evidence that bears on—on the veracity of that assertion. Originally, when this document came to my attention, there was evidence that the—the manner of his interaction with his niece was some sort of choking incident. As to that, I did feel that the prejudicial value did outweigh its probative nature, and—and indicated that it would—the document could only be admitted in a form which did not specifically indicate how it was that he had a physical assault with his niece, but on the full record of this case, I think it's admissible evidence. I've—I've instructed the state to redact it, and I do intend to give the jury a limiting instruction that it only comes in on the question of—of the defendant's credibility. It is not to be used to prove the truth of the matter asserted and should be used for no other purpose. So, the defense can have an exception to my ruling, and the state should read the appropriate portion and then fashion an exhibit that corresponds with that."

The court minimized any possible prejudice by its instruction to the jury that the statement should be used solely for the limited purpose of assessing credibility. We must conclude, therefore, that the court did not abuse its discretion in allowing the state to introduce as impeachment evidence the defendant's statement in his medical record that he assaulted his niece.

## II

The defendant next claims that the court's instructions to the jury on reasonable doubt were flawed. Specifically, he argues that the state's burden of proof was unconstitutionally[7] diluted when the court gave four instructions that he had requested not be given. The court instructed the jurors, in effect, that (1) they could arrive at the real meaning of reasonable doubt by emphasizing the word "reasonable," (2) a reasonable doubt is a real doubt, an honest doubt, (3) a reasonable doubt is the kind of doubt on which persons such as the jurors, in the more serious and important affairs of their lives, would hesitate to act, and (4) if they could, in reason, reconcile all of the facts proved within a reasonable theory consistent with the innocence of the accused, then they could not find him guilty.[8]

During oral argument, the defendant acknowledged that our Supreme Court precedent binds us; in other words, we must apply the existing law of this state as dictated by our Supreme Court. Our Supreme Court has upheld each of the four challenged sections of the court's reasonable doubt instruction. It would serve no purpose to list again a litany of citations for each of the challenged portions of that instruction. Suffice it to say, they all have been considered, resulting in the same conclusion, i.e., that they do not reduce or dilute the state's burden of proof. See, e.g., *State* v. *Whipper*, 258 Conn. 229, 293–98, 780 A.2d 53 (2001).

[7] The defendant claims that the court violated his rights under the fifth, sixth and fourteenth amendments to the United States constitution, and article first, §§ 8 and 19, of the Connecticut constitution. The defendant offers no separate analysis for his state constitutional claims and, thus, we deem them abandoned. See *State* v. *Valinski*, 61 Conn. App. 576, 589 n.11, 767 A.2d 746 (2001).

[8] The court agreed with other aspects of the defendant's request and refrained from instructing that a reasonable doubt is not one that is suggested by the "ingenuity of counsel," and that the law is intended to protect innocent persons and not guilty ones.

## III

The defendant finally claims that the court's instruction on the presumption of innocence misled the jury. He argues that he requested a specific charge that the court did not give. We disagree.

The defendant requested that the court charge as follows: "Any conclusion, reasonably to be drawn from the evidence, consistent with the innocence of [the defendant] concerning the murder charge must prevail." The court charged as follows: "Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt, is consistent with guilt and is inconsistent with any other reasonable conclusion. You must, however, distinguish between a reasonable hypothesis and a possible hypothesis. Proof of guilt must exclude every reasonable supposition of innocence. A mere hypothesis of innocence will not suffice. However, if you can, in reason, reconcile all of the facts proved within a reasonable theory consistent with the innocence of the accused, then you cannot find him guilty."

"In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Delvalle*, 250 Conn. 466, 470, 736 A.2d 125 (1999).

Our review of the entire charge, which necessarily includes both the instructions on the presumption of innocence and reasonable doubt, reveals that the instructions given by the court were more than adequate to convey the legal concept that any reasonable conclusion consistent with the defendant's innocence must prevail and that if the jury so determined, it could not find him guilty. We conclude that it was not reasonably possible that the jury was misled by the court's instructions and, therefore, no injustice resulted.

The judgment is affirmed.

In this opinion the other judges concurred.